[No. 13694-9-III. Division Three. December 5, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. BAYSY SENGXAY, *Appellant*.

*James E. Egan*, for appellant.

*Andrew K. Miller, Prosecuting Attorney*, and *Kevin L. Holt, Deputy*, for respondent.

SCHULTHEIS, J. — Baysy Sengxay confessed to participation in an armed robbery of a Laotian gambling party in Kennewick. Later, he sought to exclude the confession and testified at trial he had not been involved in the robbery. The jury found him guilty of seven counts of first-degree robbery, RCW 9A.56.190, .200(1)(b), and he appeals, assigning error to (1) the admission of his confession and certain witness testimony, (2) the failure to swear in the interpreter, (3) certain aspects of the jury instructions, and (4) prosecutorial misconduct in opening and closing arguments. We affirm.

Around midnight on September 8, 1992, five or six men dressed in camouflage jackets, with hoods and collars obscuring their faces, rushed unannounced into a gambling party in a Laotian family home. Witnesses described the men as five or six Laotians or Vietnamese, all armed. The victims were ordered to close their eyes and lie face down on the floor. While some robbers removed cash and jewelry

from the pockets and underwear of the victims, others dragged a sleeping child from bed and threatened to kill her if the homeowners did not reveal where they kept their money. The child's mother complied and the robbers left—after about an hour of threats and beatings—with gold jewelry and around $7,300 in cash.

Kennewick Police Detective Allen Knox sent a teletype to other cities asking for information on similar crimes in Laotian communities. From this he learned that detectives in Bellevue, Washington, and Portland, Oregon, were investigating a string of similar residential crimes. One Bellevue suspect, Xanxay Xayadeth, was questioned and confessed to a Seattle robbery as well as the Kennewick incident. Xayadeth identified all but one of the other four Kennewick robbers and two accomplices from photo montages. One of the men he identified was Sengxay, known as "Cee from Redding." Another of the suspects identified by Xayadeth, Khammy Khambounheuang (Khammy), later confessed, implicated Sengxay, and stated the robbers had traveled to Kennewick from Portland in Sengxay's car to commit the crime.

On July 18, 1993, Sengxay went to a Redding, California, police station to clear up a local warrant. As authorized by California law, Detective Butch Brown secretly videotaped the interview. After he read Sengxay his *Miranda* rights, Detective Brown asked him if he knew there was a warrant for his arrest in Washington. *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A.L.R.3d 974 (1966). Sengxay replied that he was stopped by police in Kansas three weeks earlier and told about the warrant out of Kennewick. Detective Brown continued to question Sengxay about general topics and eventually steered the conversation back to the Kennewick incident. At first, Sengxay denied involvement in the robbery and claimed he had never been anywhere near Kennewick. After hearing that some of his coconspirators had turned him in, the Kennewick police had other evidence against him and he was now under arrest for that crime, Sengxay

said, "I got to get me a lawyer, man." Detective Brown replied, "yep, that would be a good idea." Sengxay paused briefly and then began making incriminating statements. He made no further mention of a lawyer. In the course of the one-and-one-half-hour interview, he photo-identified five coconspirators, stated he used a .357 revolver, and admitted making $1,200 from the six-way split of the robbery's proceeds.

In a pretrial CrR 3.5 hearing,[1] Sengxay argued he did not voluntarily give his confession. He claimed he only said what he thought the officer wanted to hear in hopes that he would be allowed to leave. The court found that although Sengxay made a statement about getting an attorney, he then reinitiated contact and made incriminatory statements without requesting an attorney. On this basis, the court ruled that his statements would be admissible at trial, although the videotape itself would not. Sengxay's attorney agreed with the ruling at that time.

At trial, three convicted coconspirators who had formerly implicated Sengxay in the robbery were called by the State and each denied identifying the defendant or claimed loss of memory. One, Vaene Sivongxay, claimed the person he identified as Cee (Sengxay) was actually a Filipino named Cee who helped them commit the crime. The Filipino happened to have the same kind and color of car as Sengxay.

Two of the nine charges were dropped before the case went to the jury because two victims refused to testify in court. No objections or exceptions were raised to the jury instructions. The jury reached a verdict of guilty on all seven counts of first-degree robbery and he was sentenced to 171 months.

Sengxay raises four general assignments of error on appeal: (1) improper admission of evidence; (2) failure to swear in the interpreter; (3) irregularities in the jury

[1]"When a statement of the accused is to be offered in evidence, the judge at the time of the omnibus hearing shall hold or set the time for a hearing, . . . for the purpose of determining whether the statement is admissible." CrR 3.5(a).

instructions; and (4) prosecutorial misconduct. He did not, however, make objections or exceptions to any of these alleged errors on the record. Arguments not raised in trial court will not be considered on appeal unless they concern a manifest error affecting a constitutional right. RAP 2.5(a); *State v. Riley*, 121 Wn.2d 22, 31, 846 P.2d 1365 (1993). Accordingly, we limit our analysis to the examination of constitutional issues.

1. Admission of Evidence. Sengxay first assigns error to the admission of his confession because it was recorded on videotape without his consent, a violation of RCW 9.73.030. The Washington prohibition against videotaping a person without consent is statutory, not constitutional; therefore, Sengxay's failure to object to the testimony on this basis waived the issue. *Riley*, 121 Wn.2d at 31. Further, not only did Sengxay's counsel fail to object to the admission of his incriminating statements, but he joined in the court's ruling to exclude the actual videotape and to allow Detective Brown's testimony concerning the interrogation and confession.

Next, Sengxay contends his confession should have been excluded because it was made after he requested a lawyer. While a suspect's right to consult with counsel during interrogation is an important procedural safeguard against compulsory self-incrimination, *Miranda*, 384 U.S. at 469-73, it is not a constitutional right required by the Fifth Amendment. *Davis v. United States*, 512 U.S. 452, 114 S. Ct. 2350, 129 L. Ed. 2d 362, 371 (1994). Since Sengxay did not object on the record to the admission of his incriminatory statements, this issue was not preserved for appeal. *State v. Scott*, 110 Wn.2d 682, 688, 757 P.2d 492 (1988).

Finally, Sengxay's failure to object to the impeachment of the coconspirators waives consideration of this nonconstitutional issue. *Riley*, 121 Wn.2d 22; *State v. Barber*, 38 Wn. App. 758, 770, 689 P.2d 1099 (1984), *review denied*, 103 Wn.2d 1013 (1985).

2. Unsworn Interpreter. Both RCW 2.42.050 and ER

604 provide that an interpreter in a judicial or administrative proceeding must, before beginning to interpret, take an oath to interpret (or translate) truthfully. It is undisputed here that the interpreter who translated for several Laotian witnesses at trial was not sworn on the record. As Sengxay notes, the right to an interpreter is derived from the constitutional rights to confront witnesses and to a fair trial. *State v. Woo Won Choi*, 55 Wn. App. 895, 901, 781 P.2d 505 (1989), *review denied*, 114 Wn.2d 1002 (1990). Neither Sengxay nor any of the other witnesses, however, was denied an interpreter. Further, Sengxay did not object to the interpreter's participation at trial. Accordingly, review of this issue is precluded unless Sengxay can show an obvious error affecting the fairness of the trial. *United States v. Perez*, 651 F.2d 268, 273 (5th Cir. 1981) (failure to object to unsworn interpreter waives the issue unless plain error is shown). Sengxay does not contend the interpreter here translated inaccurately; he only hypothesizes that if the interpreter did translate inaccurately, it may have affected his ability to successfully cross-examine those witnesses. This is not enough to show obvious error. *Perez*, 651 F.2d at 273.

3. Jury Instructions. Sengxay next contends the court failed to provide him an opportunity on the record to object to the jury instructions in the absence of the jury. The right to object to jury instructions is afforded by court rule, not constitutional law. CrR 6.15(c) provides that the court "shall afford to counsel an opportunity in the absence of the jury to object to the giving of any instructions and the refusal to give a requested instruction . . . ." Sengxay did not object before or during the reading of the instructions, however, and the issue is not preserved for appeal. *Scott*, 110 Wn.2d at 685-86.

4. Prosecutorial Misconduct. Finally, Sengxay contends that prosecutorial misconduct during argument and cross-examination was so improper as to deny him a fair trial. Failure to object to an improper comment constitutes a waiver of this issue unless the remark is so

flagrant and ill intentioned that it causes an enduring prejudice that could not have been neutralized by a curative instruction to the jury. *State v. Russell*, 125 Wn.2d 24, 85-86, 882 P.2d 747 (1994), *cert. denied*, 115 S. Ct. 2004 (1995); *State v. Hoffman*, 116 Wn.2d 51, 93, 804 P.2d 577 (1991). Although Sengxay contends he objected to the prosecutor's opening statement in a bench conference, no objection to this argument or to any of the other prosecutorial errors alleged on appeal is contained on the record,[2] and no curative instruction was proposed. Accordingly, this issue is waived.

Affirmed.

SWEENEY, A.C.J., and MUNSON, J., concur.