94 P.3d 987 (2004)
Jesse MAGANA, Respondent/Cross Appellant,
v.
HYUNDAI MOTOR AMERICA; Hyundai Motor Company, Appellants/Cross Respondents,
Ricky Smith and Angela Smith, husband and wife, Appellants.
No. 29347-1-II.
Court of Appeals of Washington, Division 2.
July 20, 2004.
As Amended September 21, 2004.
*988 Christine M. Masse, Miller Nash LLP, Michael B. King, King, Lane Powell Spears Lubersky LLP, Seattle, WA, for Appellant/Cross-Respondent.
Jerret E. Sale, Deborah Lynn Carstens, Bullivant Houser Bailey PC, Seattle, WA, for Appellant.
Garth L. Jones, Stritmatter Whelan Withey et al, Hoquiam, WA, Charles Kenneth Wiggins, Kenneth Wendell Masters, Attorneys at Law, Bainbridge Island, WA, Paul W. Whelan, Peter O' Neil, Stritmatter Kessler Whelan Withey et al, Derek Jay Vanderwood, Attorney at Law, Vancouver, WA, for Respondent/Cross-Appellant.

PART PUBLISHED OPINION
SEINFELD, J.P.T.[1]
Jesse Magana was a passenger in a Hyundai vehicle that left the road and hit several trees; the force propelled him through the car's rear window, causing him to sustain serious injuries. Magana sued the car manufacturer alleging a design defect, and he sued the Hyundai's driver and the driver of an oncoming vehicle, alleging negligence. During trial, the court initially admitted testimony from Magana's expert about the benefits of an integrated seat belt design. Although the court later struck this evidence, it declined to instruct the jury that the testimony had been stricken.
We hold that this ruling was error. Further, because the stricken expert testimony introduced a new theory of liability and could have substantially affected the verdict, it was not harmless. Therefore, we reverse the judgment against the car manufacturer and remand for a new trial.

FACTS

A. The Car Accident

On February 15, 1997, Ricky Smith was driving a rented 1996 Hyundai Accent two-door hatchback. Angela Smith and Magana were passengers. Upon cresting a hill on a rural road, they suddenly saw an oncoming truck coming toward them; it appeared to be in their lane. Ricky jerked the wheel, causing the car to "yaw" and leave the road. VI Report of Proceedings (RP) at 792.
The Hyundai hit at least two trees and the force caused it to spin violently. The resulting centrifugal force threw Magana out of the car's rear window; he landed 50 to 100 feet away from where the car finally stopped. Magana's resulting injuries left him a paraplegic; *989 Ricky Smith suffered a concussion, and Angela Smith broke her leg, collarbone, and shoulder blade.

B. Magana's Lawsuit

On February 8, 2000, Magana filed this lawsuit against Hyundai Motor America and Hyundai Motor Company (Hyundai), the Smiths, and the truck driver and his wife (the Nylanders). Magana alleged that the car in which he was riding contained a "defective design [that] was a proximate cause of [his] injuries and damages" and that Ricky Smith's and Nylander's negligent driving proximately caused the car accident. Clerk's Papers (CP) at 4.

1. Hyundai's and Magana's Pre-trial Motions
During discovery, Magana and Hyundai took the depositions of two experts, Dr. Joseph Burton and Stephen Syson. Burton and Syson discussed the passenger restraint system, which they described as the passenger seat back, airbag, and seat belt hardware. They did not mention an integrated seat belt design.
Hyundai then moved for partial summary judgment regarding the car's airbag. It asked the court to look at the airbag, seat back, and seat belt as separate entities and require Magana to produce some evidence that each was defective. Instead, the trial court accepted Magana's contention that these components were part of a system. Thus, in January 2002, the court denied the motion.
Before trial, Magana moved to strike Hyundai's affirmative defense of contributory fault. Magana argued that this was a "crashworthiness" case in which his alleged contributory fault was irrelevant as a matter of law. CP at 259. The trial court granted Magana's motion.

2. Smiths' and Nylanders' Pretrial Motions
Magana personally served the Smiths shortly after he filed his complaint in February 2000. When the Smiths had not answered by October 2000, the trial court granted Magana's motion for an order of default against them.
On April 12, 2001, the Smiths filed for bankruptcy. The bankruptcy court dismissed the Smiths' bankruptcy petition for want of prosecution in November 2001.
On December 21, 2001, the trial court entered two orders affecting the Smiths: (1) an order requiring Ricky Smith to appear for a deposition; and (2) a default order on the Nylanders' cross claims against the Smiths. And on January 11, 2002, the trial court granted summary judgment to the Nylanders, dismissing them from Magana's lawsuit.
Finally, on January 28, 2002, the Smiths' counsel filed a notice of appearance and, three months later, the Smiths moved to set aside the default order. The Smiths also moved to vacate the December 2001 orders, contending that the trial court entered them during the bankruptcy's pendency.
Finding that the Smiths had failed to show good cause, the trial court denied the motion to set aside the default as to negligence. But the court allowed the Smiths to litigate proximate cause and damages.

C. The Trial

A major factual issue during this three week trial was where Magana had been sitting at the time of the collision. To prove that he had been in the front seat and that the failure of the front seat's seat back allowed his body to fly through the rear window, Magana introduced testimony from neighbors of the accident site; from an emergency medial technician (EMT), who stated that Angela Smith had been in the back seat; and from other witnesses who testified that Angela Smith's injuries were caused by the front seat collapsing backward on her.
Hyundai attempted to prove that Magana had been sitting in the back seat and that Angela Smith had been seated in the front. Its witnesses testified that Angela Smith's injuries were the result of sitting in the front seat.
Ricky Smith, who was unable to discuss details of the accident on the day of the accident because of his concussion, told police *990 the next day that Angela had been sitting in the front. Angela Smith did not speak with police at the time of the accident; but four years later she stated in her deposition that she had been sitting in the front.
Magana's experts testified that the Hyundai seat back was defective because it lacked adequate strength and had too much yield upon sudden impact. But Hyundai's expert testified that a more rigid seat back could cause more injury in a high impact accident.
Near the beginning of trial, Magana called Dr. Joseph Burton, a forensic pathologist with experience in applying such knowledge to automobile accidents.[2] Much of Burton's testimony concerned how Magana and the Smiths were injured in the accident, such as the relationship between the Hyundai's seat restraint system and the injuries.
But Hyundai objected when Magana's counsel asked a question about an alternative theory of liability, the lack of an integrated seat belt design.[3] The testimony was as follows:
Q. And one of the alternative designs is actually to build the belt right into the seat; is that correct?
A. Yes. It's called integrated seats, that's the configuration, where the belts and the retractors are a part of the seat itself.
Q. [Magana's counsel] And is that a design that's used in some vehicles today?
[Hyundai]: Objection, your honor
[Magana's counsel instructed to rephrase]
Q. Is that a design that you've seen on vehicles that are on the road?
A. Yes, sir.
[Hyundai objects; court overrules]
A. There are many vehicles on the road now that have such designs, yes, sir.
Q. And would that be a design that you think may have prevented Mr. Magana from being ejected from the vehicle?
A. If it worked right, it would have prevented whomever was in that seat from being ejected, most probably.
VII-A RP at 977-78.[4]
Four days later, the trial court reconsidered its decision and ruled that it should have sustained Hyundai's objection to Burton's testimony about "an alternative seat design" of an integrated seat belt. XI RP at 1666. Following discussion, the court and Hyundai's counsel agreed that the best time to instruct the jury to disregard that testimony would be during the testimony of Michael James, Hyundai's design expert.
James testified close to the end of trial. Hyundai asked him no questions about integrated seat belts but on cross examination, Magana asked about this alternative to seat belts fixed to a car's interior post. James replied "it's not that common, but there are  there are more vehicles that have them now than had them ten years ago." XII-B RP at 1926. Neither party asked James about the benefits or risks of integrated seat belts. And neither Hyundai nor the court mentioned the stricken Burton testimony.
After the parties rested and were discussing jury instructions with the court, Hyundai asked the court to instruct the jury to not consider Burton's stricken testimony. Magana objected, arguing that Hyundai should have made this request during James's testimony. The court stated, "I had not thought of that at the right time myself, either." XV RP at 2276. And later, the court stated: "I apologize for not having thought of it at that time. We were planning on doing it contemporaneous with Mr. James." XV RP at 2277.
*991 In an apparent compromise effort, the court reaffirmed its ruling striking Burton's challenged testimony but declined to advise the jury of its action because of concerns that an instruction at this juncture would highlight the evidence. But the court advised Magana's counsel not to refer to the testimony during closing argument, and it explained that the testimony would not be part of the record when considering any sufficiency of the evidence challenge.
By a ten to two vote, the jury returned a verdict in favor of Magana for over eight million dollars, attributing 60 percent of the fault to Hyundai and 40 percent to Ricky Smith. On a special verdict form, it answered "Yes" to the question: "Did Defendant Hyundai supply a product that was not reasonably safe as designed?" CP at 552.
Hyundai then moved for a new trial, arguing that two jurors engaged in misconduct by using information not introduced at trial to design their own seat back. The court denied Hyundai's motion.
Hyundai appeals the trial court's denial of its motion to instruct the jury about the stricken expert evidence. It also challenges the ruling striking its contributory fault affirmative defense, several evidentiary rulings, and the denial of its motion for a new trial based on juror misconduct. The Smiths appeal the denial of their motion to set aside the default order against them on liability, the denial of their motions to vacate certain orders allegedly entered during the pendency of their bankruptcy petition, and the rejection of their proposed jury instructions.[5]

ANALYSIS

I. EXPERT TESTIMONY REGARDING INTEGRATED SEAT BELT DESIGN
Hyundai challenges the trial court's refusal to instruct the jury about the striking of Burton's integrated seat belt testimony. Magana responds that Hyundai waived its request for a curative instruction by failing to make it during James's testimony and, further, that the disputed testimony was harmless. The record does not support Magana's arguments.
The doctrine of waiver typically involves a party's acquiescence to a trial court ruling. State ex rel LaMon v. Town of Westport, 73 Wash.2d 255, 261, 438 P.2d 200 (1968) overruled on other grounds, Cole v. Webster, 103 Wash.2d 280, 288, 692 P.2d 799 (1984). A party may waive its right to challenge a ruling on appeal by failing to object below or by engaging in conduct that invites the ruling. State v. Sengxay, 80 Wash.App. 11, 15, 906 P.2d 368 (1995). Generally, the appellate court will not review a ruling that the appellant waived below. See RAP 2.5.
The record here does not support a finding of waiver. Although both Hyundai and the court forgot about the curative instruction during James's testimony, Hyundai reminded the court about the instruction before the court gave the jury its final instructions. And Hyundai took exception to the court's failure to instruct the jury.
Moreover, the court never suggested that Hyundai's request was untimely or that the delay in making the request appeared to be tactical. Instead, the court further apologized for not raising the issue itself, recognizing that it was not solely relying upon Hyundai to remind the court to advise the jury about the stricken evidence. And the court responded to Hyundai's exception by stating, "All right. Very good." XV RP at 2277. Thus, Hyundai did not waive its right to appeal the court's failure to instruct regarding the stricken expert testimony.
Moving to the merits of Hyundai's challenge to the court's failure to instruct, we first emphasize that this is not a challenge to the trial court's ruling admitting or excluding *992 evidence.[6] Thus, ER 103 does not apply, and this case is distinguishable from State v. Bourgeois, 133 Wash.2d 389, 403, 945 P.2d 1120 (1997) (the failure to exclude evidence is harmless when it "is of minor significance in reference to the overall, overwhelming evidence as a whole.").
It is error for the jury to consider evidence that the court either has not admitted or has stricken. State v. Balisok, 123 Wash.2d 114, 118, 866 P.2d 631 (1994). The jury's first introductory instruction emphasizes this critical point:
The evidence you are to consider consists of the testimony of the witnesses and the exhibits admitted into evidence.... You will disregard any evidence which either was not admitted or which was stricken by the court.
CP at 532.
This introductory instruction incorporates a fundamental premise of our litigation system: that the Evidence Rules govern the admission of evidence at trials so as to afford every litigant a fair proceeding. See ER 101, 102, 1101(a); State v. Bartholomew, 101 Wash.2d 631, 640, 642, 683 P.2d 1079 (1984); see also State v. Gentry, 125 Wash.2d 570, 622-23, 888 P.2d 1105 (1995) (discussing Bartholomew II). Except for judicially noticed facts under ER 201, the fact finder may not consider evidence that was not admitted in court. State v. Brown, 139 Wash.2d 20, 24, 983 P.2d 608 (1999). And we presume that the jury will follow the court's instruction to disregard evidence that the court has stricken. State v. Hanna, 123 Wash.2d 704, 711, 871 P.2d 135 (1994).
Clearly, the jury could not follow the court's instruction to disregard stricken evidence when the court failed to advise the jury that it struck that portion of Burton's testimony that it had earlier admitted over Hyundai's objection. See Jury Instruction 1, CP at 532; see also Jury Instruction 9, CP at 541 (properly requiring the jury to consider if the "occupant restraint system comprised of the seat back, seat belt, and air bag" was an unsafe product, but improperly allowing the jury to consider the stricken expert testimony about an integrated seat belt design by instructing them to consider "all the evidence."). Although the trial court has discretion in determining the number and specific language of jury instructions, it is an abuse of this discretion to reject an instruction about stricken evidence where the absence of such an instruction misleads the jury as to what evidence is properly before it. See Havens v. C & D Plastics, 124 Wash.2d 158, 165, 167, 876 P.2d 435 (1994) (not an abuse of discretion to reject cumulative instruction); Blaney v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 160, 151 Wash.2d 203, 210, 87 P.3d 757 (2004) (proper instructions are not misleading). Thus, the trial court erred in rejecting Hyundai's motion to instruct the jury about Burton's stricken testimony.
We will not reverse because of instructional error absent prejudice. Adcox v. Children's Orthopedic Hosp., 123 Wash.2d 15, 36, 864 P.2d 921 (1993); Mavroudis v. Pittsburgh-Corning Corp., 86 Wash.App. 22, 36, 935 P.2d 684 (1997). Error is prejudicial if it substantially affected the outcome of the case. Blaney, 151 Wash.2d at 211, 87 P.3d 757; Mavroudis, 86 Wash.App. at 36, 935 P.2d 684. But an erroneous jury instruction is harmless if it "is trivial, or formal, or merely academic, and was not prejudicial to the substantial rights of the party assigning it, and in no way affected the final outcome of the case." State v. Townsend, 142 Wash.2d 838, 848, 15 P.3d 145 (2001) (citations omitted).
Blaney involved an erroneous jury instruction about the calculation of plaintiff's future earnings. In evaluating whether the error was harmless, the Blaney court first presumed prejudice. We do not presume prejudice here because, unlike in Blaney, the jury instructions did not misstate the law. 151 Wash.2d at 208, 210, 87 P.3d 757; see also Keller v. City of Spokane, 146 Wash.2d 237, 249-50, 44 P.3d 845 (2002). ("Even if an *993 instruction is misleading, it will not be reversed unless prejudice is shown ... A clear misstatement of the law, however, is presumed to be prejudicial.") (citations omitted). The Blaney court then engaged in a "comprehensive examination of the record" to determine if the error substantially affected the outcome and, thus, was not harmless. 151 Wash.2d at 211, 87 P.3d 757. We have likewise examined the record.
Magana argues that the error was harmless because Hyundai's expert, James, testified for "62 lines about integrated seats" while Burton testified for "just 19 lines." Br. of Respondent at 13. But Burton, who was not an expert in car design, testified that the use of integrated seat belts would have "most probably" prevented Magana's ejection from the vehicle. VII-A RP at 978. And Hyundai's objection to this line of questioning, overruled by the trial court in the jury's presence, clearly could have alerted the jury to pay special attention to Burton's definitive conclusory response.
Further, Hyundai did not question James about the concept of "integrated seat" design. XII-B RP at 1924. The testimony arose on Magana's cross examination. And although James acknowledged that "there are advantages to integrated seats in frontal impacts," he was not asked and did not volunteer what those advantages would be. XII-B RP at 1925. Thus, James's limited testimony did not render Burton's earlier statements cumulative.
Finally, we cannot measure prejudice by counting lines of testimony. Rather, we must examine the entire record, looking at the potential impact of the challenged testimony in context.
The parties' experts heavily contested the factual question of the proper strength of the seat back, and the jury was divided ten to two on liability. Thus, if Burton's testimony swayed even one juror, it substantially affected the outcome.
We acknowledge that it is not possible for a reviewing court to with certainty "determine what evidence or instruction influenced the jury's decision." Dennis J. Sweeney, An Analysis of Harmless Error in Washington: A Principled Process, 31 GONZ L.REV. 277, 279 (1995-96). As Judge Sweeney points out, "jurors form[ ] impressions  impressions based on many factors to which no appellate court can ever be privy." Sweeney, supra at 280. Nonetheless, the record contains significant challenges to Magana's primary trial theory and shows that the integrated seat belt evidence provided a second alternative theory to support a finding against Hyundai.
Magana's primary trial theory was that if the seat back had been more rigid, it would not have given way when subjected to the centrifugal forces that caused the car to go into a spin. But Hyundai's expert, James, countered that the seat back strength exceeded federal standards by a large margin and that an even more rigid seat back could have been more dangerous in a rear impact, which throws the occupant forward. According to a study presented by James, "increasing seatback stiffness, making seats more rigid, is probably going to make things worse and not better for the overall picture of all accidents."[7] XII-B RP at 1899. The expert testimony indicates that a seat back must be neither too rigid nor too yielding.
Ten jurors concluded that the vehicle was unreasonably unsafe; two jurors disagreed. We have no way of conclusively determining how many of the ten relied on Magana's defective seat back theory and how many relied on Burton's broad and conclusory testimony that an integrated seat belt would have prevented Magana's ejection through the rear window. But considering the significant evidence rebutting Magana's defective seat back theory, there is a reasonable probability that the seat back evidence was unpersuasive to at least one of the ten jurors voting for liability, and that such juror relied instead on Burton's stricken evidence about the seat belt system. Because one vote would have changed the outcome, the error *994 in failing to advise the jury that the court had stricken Burton's seat belt evidence was neither trivial, formal, nor academic. Rather, there is at least a substantial possibility that the error affected the verdict.[8]
We also note that Magana's trial counsel did not dispute Hyundai's characterization of the record regarding the integrated seat belt design evidence. Hyundai's counsel argued that "with that testimony stricken, there's nothing on the record virtually at all about an integrated seatbelt system" and therefore Magana should not address it in closing argument. XV RP at 2278. Magana's trial counsel agreed and refrained from raising this topic in his closing argument.
Thus, the trial court's failure to instruct the jury about Burton's stricken expert testimony was reversible error.
A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: HOUGHTON, J., and QUINN-BRINTNALL, C.J.
NOTES
[1] Judge Seinfeld is serving as a judge pro tempore of the Court of Appeals, Division II, pursuant to CAR 21(c).
[2] A forensic pathologist is a medical doctor specializing in what happens to the body when it is injured. Burton was asked to determine: (1) Magana's position in the car; (2) whether Magana was using a seat belt; (3) Magana's mode of exit; (4) whether Magana's primary injuries were from being ejected or occurred within the car; and (5) whether Magana would have suffered these injuries if the seat had remained in an upright position. Burton concluded that Magana was in the front right seat at the time of the accident, was wearing his seat belt, and that his injuries would have been substantially less severe if the seat had not collapsed.
[3] In an integrated seat belt design, the shoulder harness is attached to the seat itself as opposed to the car pillar.
[4] This quoted portion of the record reflects the parties STIPULATION AND ORDER AMENDING VERBATIM REPORT OF PROCEEDINGS filed May 1, 2003.
[5] Magana's former appellate counsel filed a notice of cross appeal that challenged the court's denial of his partial summary judgment motion regarding Hyundai's affirmative defense of Magana's contributory fault. But Magana appears to have abandoned this appeal because his appellate briefs do not assign error and the issue is moot because the court granted his motion in limine, which struck this affirmative defense. The record indicates that Magana has not formally withdrawn his notice of cross appeal.
[6] Magana did not cross appeal the trial court's ruling striking Burton's testimony; nor does it suggest that the ruling was incorrect.
[7] The National Accident Sampling System ("NASS") data, collected and compiled by federal investigators, indicated that rear impacts comprise 12 percent of all accidents but result in only 1 percent of serious injuries. Hyundai used the NASS data to show the benefits of "yielding seat backs." XII-B RP at 1899.
[8] At oral argument, the parties were unclear as to the test for prejudice where the court declined to advise the jury that it struck certain evidence. Magana's appellate brief, citing ER 103 and RAP 2.4(b), describes the test as whether "within reasonable probabilities, had the error not occurred, the result might have been materially more favorable to the one complaining of it." Br. of Respondent at 14 (citations omitted). As discussed above, we do not accept Magana's test. But we note that application of his test supports a finding of prejudice.