IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| MARK AND NANCY MARLOW, husband and wife, | ) ) ) | No. 31013-2-III |
| Appellants, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| DOUGLAS COUNTY, a subdivision of the State of Washington, | ) ) ) | |
| Respondent. | ) | |

BROWN, J. — Mark and Nancy Marlow appeal the Douglas County Superior

Court's denial of their land use petition under the Land Use Petition Act (LUPA), chapter

36.70C RCW, concerning improvements to their Columbia River waterfront property

purchased in 1997. In 2011, Douglas County (County) issued a notice of land use

violation and order to comply (NOV). A hearing examiner found the Marlows had

violated, inter alia, the Shoreline Management Act (SMA), chapter 90.58 RCW; section

173-27 WAC (Shoreline Permit and Enforcement Procedures); and the Douglas County

Shoreline Master Program (SMP). The Marlows contend here as they did at the

superior court (1) the hearing examiner lacked legal authority or jurisdiction to impose

injunctive relief, (2) the proceeding was barred by the statute of limitations, (3) the

hearing examiner misallocated the burden of proof, (4) the hearing examiner wrongly interpreted the law regarding shoreline exemptions, and (5) evidentiary error. We find no error, and affirm.

## FACTS

In 1997, the Marlows bought Douglas County waterfront property along the Columbia River near Rock Island. The shoreline is steep and rocky, with a portion excavated approximately 75 to 100 years ago apparently for a ferry landing. The property included a rock/dirt boat launch and a 4-foot-wide by 16-foot-long dock.

In 1997, the Marlows constructed a concrete block retaining wall and a second retaining wall in 1998 or 1999. They claim the retaining walls were necessary to stop soil erosion. They further installed a concrete pad above one of the retaining walls for a hot tub. Also in 1997, the Marlows replaced the rock/dirt boat launch with a concrete launch. In 2003, the Marlows installed a 55-foot bulkhead, sidewalks, and a patio. The bulkhead is one to two feet landward of the ordinary high water mark. In 2006, the Marlows replaced the concrete blocks in their retaining walls with flat stones. They brought in fill sand and attached a slide to the bulkhead that was later removed. In 2008, the Marlows replaced the existing dock with a grated dock (the prior dock had a solid surface), which is more "environmentally friendly." Clerk's Papers (CP) at 660. And, they installed a boat lift. The new dock was 8-feet-wide by 20-feet-long.

On June 24, 2011, the County issued a NOV to the Marlows. The NOV described the Marlows' unauthorized development on the Columbia River shoreline as violations, specifically including the boatlift; concrete bulkhead, sidewalk, and patio;

2

concrete launch ramp; multiple dock floats and a dock ramp; diving board and slide; grading and retaining walls; non-native sand; and the concrete pad under the hot tub.

The Marlows appealed to the Douglas County Hearing Examiner. In a November 2011 hearing, the Marlows offered the testimony of Tony Roth, a certified wetlands scientist, who visited the Marlows' property from Seattle on the day of the hearing and then opined "continuity of use" was best for the environment. CP at 663. The hearing examiner found Mr. Roth was not "an expert witness" and "[e]ven if Mr. Roth could be characterized as an expert witness . . . Mr. Roth's purported opinions [are not] convincing." CP at 13. The hearing examiner affirmed the County's NOV, entering findings of fact and conclusions of law.

The Marlows then filed a LUPA petition in the Douglas County Superior Court, challenging the hearing examiner's decision. The court dismissed their petition, concluding the County had jurisdiction to provide a NOV and the Marlows had failed to show they obtained the necessary permits for their improvements or that they were exempt from obtaining permits. The Marlows appealed to this court.

ANALYSIS

A. Jurisdiction

The issue is whether the hearing examiner lacked jurisdiction to affirm the County's NOV. The Marlows contend the hearing examiner's decision amounted to an unlawful injunction that the examiner does not have authority to impose.

LUPA governs judicial review of Washington land use decisions. *HJS Dev., Inc. v. Pierce County ex rel. Dep't of Planning & Land Servs.*, 148 Wn.2d 451, 467, 61 P.3d

1141 (2003). Relief from a land use decision may be granted if the petitioner carries its

burden in establishing one of six standards of relief:

> (a) The body or officer that made the land use decision
> engaged in unlawful procedure or failed to follow a
> prescribed process, unless the error was harmless;
> (b) The land use decision is an erroneous interpretation of
> the law, after allowing for such deference as is due the
> construction of a law by a local jurisdiction with expertise;
> (c) The land use decision is not supported by evidence that
> is substantial when viewed in light of the whole record before
> the court;
> (d) The land use decision is a clearly erroneous application
> of the law to the facts;
> (e) The land use decision is outside the authority or
> jurisdiction of the body or officer making the decision; or
> (f) The land use decision violates the constitutional rights of
> the party seeking relief.

RCW 36.70C.130(1).

Standards (a), (b), (e) and (f) present questions of law we review de novo, but

under (b) we give deference to the hearing examiner's construction of local land use

regulations based on his or her specialized knowledge and expertise. *Cingular

Wireless, LLC v. Thurston County*, 131 Wn. App. 756, 768, 129 P.3d 300 (2006).

Standard (c) involves factual determinations we review for supporting substantial

evidence. *Id.* We consider all of the evidence and reasonable inferences in the light

most favorable to the party who prevailed in the highest forum that exercised fact-

finding authority. *Id.*

"'When reviewing a superior court's decision on a land use petition, the appellate

court stands in the shoes of the superior court.'" *HJS Dev.*, 148 Wn.2d at 468 (quoting

*Citizens to Preserve Pioneer Park LLC v. City of Mercer Island*, 106 Wn. App. 461, 470,

24 P.3d 1079 (2001)). "'An appellate court reviews administrative decisions on the record of the administrative tribunal, not of the superior court.'" *HJS Dev.*, 148 Wn.2d at 468 (quoting *King County v. Boundary Review Bd.*, 122 Wn.2d 648, 672, 860 P.2d 1024 (1993)).

The Marlows first argue the land use decision is outside the authority or jurisdiction of the body or officer making the decision (RCW 36.70C.130(1)(e)). Implementation of the SMA is a coordinated effort of the State and local jurisdictions. The SMA and applicable regulations expressly provide for the County's permitting and enforcement under the SMA and SMP. RCW 90.58.050, 140(3); WAC 173-27-240.

Regarding penalties, RCW 90.58.210(3) provides they "shall be imposed by a notice in writing . . . to the person incurring the same from the department or local government, describing the violation with reasonable particularity and ordering the act or acts constituting the violation or violations to cease and desist or, in appropriate cases, requiring necessary corrective action to be taken within a specific and reasonable time."

Likewise, WAC 173-27-240 was codified to "implement the enforcement responsibilities of the department and local government under the Shoreline Management Act." Further, this code section "provides for a variety of means of enforcement, including civil and criminal penalties, orders to cease and desist, orders to take corrective action, and permit rescission." *Id.*

In harmony with RCW 90.58.210(3) and WAC 173-27-270, the County ordered

the Marlows to stop property development and identified specific corrective steps to

comply with the County's SMP:

> 1. Immediately cease and desist all development . . . .
> 2. Submit to the Douglas County Department of
> Transportation and Land Services, within 30 days, the
> following:
> > a. A Shoreline Management Substantial
> > Development Permit Application . . . ;
> > b. State Environmental Policy Act (SEPA)
> > Environmental Checklist;
> > c. A fish and wildlife habitat management and
> > mitigation plan . . . ; and
> > d. Appropriate application fees in the amount of
> > $3,208.00.
> 3. In accordance with an approved shoreline substantial
> development permit and fish and wildlife habitat
> management and mitigation plan, all structures and
> development identified in this notice and order must be
> removed and remediated.

CP at 66-67.

Citing *Chaussee v. Snohomish County Council*, 38 Wn. App. 630, 689 P.2d 1084

(1984), the Marlows argue the examiner exceeded his jurisdiction by granting

"injunctive" relief. In *Chaussee*, the court addressed a challenge to injunctive relief.

The case involved the authority of a hearing examiner and the county council to

consider and apply the doctrine of equitable estoppel in a land use administrative

proceeding. The court held that the authority of a hearing examiner is created by and

limited to the statutes and/or ordinances creating the position. *Id.* at 636-38. Here,

however, the hearing examiner was affirming action authorized by RCW 90.58.210(3)

and WAC 173-27-270, not imposing an injunction.

6

*Herman v. Shorelines Hearings Board*, 149 Wn. App. 444, 457-58, 204 P.3d 928 (2009) is instructive. There, this court reversed the superior court's decision and reinstated a Shorelines Hearings Board (SHB) order. The SHB order included an order to comply, conditions required to comply, and imposed sanctions if compliance was not achieved. In affirming the order, this court acknowledged the SHB's authority to place conditions on development and held the administrative order was not self-executing. Similarly, in *Twin Bridge Marine Park, LLC v. Department of Ecology*, 162 Wn.2d 825, 175 P.3d 1050 (2008), our Supreme Court held the Department of Ecology had no authority to directly review a county development permit or issue fines for noncompliance with the SMA. *Id.* at 845-46. The authority was granted to the county.

Accordingly, because the NOV issued to the Marlows and affirmed by the hearing examiner, does not impose injunctive relief and is within the authority granted by statute and code, it is not outside the authority or jurisdiction of the body or officer making the decision. Thus, we conclude the Marlows have not met their burden to justify relief under RCW 36.70C.130(1)(e).

## B. Statute of Limitations

The issue is whether the County's NOV was barred by the statute of limitations. The Marlows initially argued the NOV is essentially a civil penalty and a misdemeanor, which carry a two-year statute of limitations and one-year statute of limitations, respectively. In their reply brief, however, the Marlows appear to concede no statute of limitations applies to these proceedings, but they ask us to take the delay in enforcement into consideration.

7

As discussed above, the County properly issued a NOV that the hearing examiner had jurisdiction to affirm. This case does not involve civil penalties or criminal liability as contemplated by the time limitations set forth in RCW 4.16.100(2) (two-year statute of limitations to pursue civil penalties) and RCW 9A.04.080(1)(j) (one-year statute of limitations for misdemeanors). Accordingly, these proceedings are not barred by the statute of limitations.

## C. Burden of Proof

The issue is whether the hearing examiner applied an incorrect burden of proof thereby justifying relief under RCW 36.70C.130(1)(a). The Marlows contend the examiner wrongly placed the burden on them to demonstrate SMA compliance.

Douglas County Code 2.13.070(A)(3), grants the hearing examiner authority to review appeals "alleging an error in a decision" in the "enforcement of violations of the zoning code or any other development regulation." The error must be alleged by the appellant, here, the Marlows.

Further, under the SMA, the proponent seeking a development permit has the burden of proving the policies and regulations of the SMA have been met. RCW 90.58.140(7). The statute places the burden of proof on any party challenging the granting or denial of a permit. Similarly, the proponent of development has the burden of proving the development is exempt from permitting. WAC 173-27-040(1)(c).

Relying on *Post v. City of Tacoma*, 167 Wn.2d 300, 217 P.3d 1179 (2009), the Marlows argue the County had the burden of proof before the hearing examiner. *Post* involved a challenge to over $500,000 in infraction penalties administratively imposed

8

by Tacoma under its building code. The penalties were imposed without any opportunity for administrative challenge or review, and were struck down by the Supreme Court as violating due process. Here, the Marlows exercised their right to administratively challenge the NOV and no infractions were issued or penalties imposed. The Marlows will be subject to enforcement solely after their failure to comply with the NOV. Thus, the *Post* case is distinguishable on its procedure and facts.

The Marlows cite WAC 461-08-500(3), which provides, "Persons requesting review pursuant to RCW 90.58.180(1) and (2) shall have the burden of proof in the matter. The issuing agency shall have the initial burden of proof in cases involving penalties or regulatory orders." This section, however, applies to proceedings before the SHB, which reviews cases de novo. And, the term "agency" used in WAC 461-08-500(3) is defined as "any state governmental agency." A county falls within the defined term "local government." WAC 461-08-305(7). Therefore, the burden of proof provision in WAC 461-08-500(3) is not applicable to proceedings before a county hearing examiner.

Under RCW 90.58.140(7) and WAC 173-27-040(1)(c), the burden of proof is on the Marlows to demonstrate they did not develop within the shoreline, or they obtained all necessary permits, exemption determinations and other approvals. The Marlows have failed to meet their burden of proof to establish the standard for relief at RCW 36.70C.130(1)(a).

## D. Exemption Claims

The issue is whether the hearing examiner erred in concluding the Marlows failed to meet their burden of showing "the dock . . . boat launch . . . bulkhead . . . and four new retaining walls could qualify as exemptions." CP at 19 (Conclusion of Law 7). The Marlows contend they were exempt from the WAC's shoreline permit and enforcement procedures requirements.

Initially, we note the Marlows did not specifically assign error to the hearing examiner's findings of fact, but provided a general objection in assignment of error 3, stating, "This issue affected all findings of fact and particularly the findings related to [the] Marlows' contention that their actions were exempt from permitting requirements." Br. of Appellant at 2. While not a specific assignment of error of each finding as contemplated by RAP 10.3(g), RAP 1.2(a) requires we interpret the appellate rules liberally "to promote justice and facilitate the decision of cases on the merits." The Marlows' briefing clearly reveals their challenges. Even so, the evidence and reasonable inferences are viewed in the light most favorable to the party who prevailed in the highest forum that exercised fact-finding authority (the County). *Cingular Wireless, LLC*, 131 Wn. App. at 768.

Under the WAC's shoreline permit and enforcement procedures, local entities are required "to establish a program, consistent with rules adopted by the department of ecology, for the administration and enforcement of the permit system for shoreline management." WAC 173-27-020. But, under WAC 173-27-040 several exemptions exist to the permit requirement. The County's NOV ordered the Marlows to submit to

the County, "A Shoreline Management Substantial Development Permit Application."

CP at 66. The Marlows argue exemptions existed for the dock, boat launch, bulkhead, and retaining walls but the hearing examiner concluded otherwise. We review conclusions of law de novo. *City of Univ. Place v. McGuire*, 144 Wn.2d 640, 652, 30 P.3d 453 (2001).

The dock was installed sometime after 1984, after adoption of the SMA and the County's SMP. But, the County did not issue a determination of exemption or letters of exemption for this prior dock. In 2008, the Marlows placed a new dock in the shoreline. The Marlows claim this dock was exempt in 2008 based on WAC 173-27-040(2)(b). "Normal maintenance or repair of existing structures or developments" do not require substantial development permits. WAC 173-27-040(2)(b). The original dock, however, was not maintained or repaired; it was replaced by one considerably larger and wider in a different style. Accordingly, the hearing examiner properly concluded this structure was not exempt from the permit requirements.

The boat launch was constructed in 1997. It is a long concrete structure extending from a concrete parking area down into the Columbia River. Concrete was poured 5 to 10 feet into the Columbia River. The Marlows argue the boat launch was exempt based on maintenance or repair under WAC 173-27-040(2)(b). But, the original launch was dirt and rock, the new boat launch is made out of a different material and is a different size and shape. The work was not limited to maintenance or repair and required a permit. The Marlows argue they were exempt based on the fair market value of the repairs. Former RCW 90.58.030(3)(e) (1997) provides that improvements having

11

a fair market value of less than $2,500 are not substantial developments and do not require a permit (the current statute has raised the amount to $5,000). While the Marlows claim the concrete cost less than $2,500, that claim alone is not substantial evidence to establish the fair market value. *See Magana v. Hyundai Motor Am.*, 123 Wn. App. 306, 320, 94 P.3d 987 (2004) (bare, self-serving declarations are inadequate).

The bulkhead was constructed by the Marlows in July 2003. It consists of a large 60-foot concrete structure along the shoreline. Concrete was poured waterward of the ordinary high water mark to a depth of three to six feet. The Marlows argue the bulkhead was eligible for the fair market value exemption. During his testimony, Mr. Marlow could not remember how much he paid for the concrete bulkhead until reminded by his counsel. Mr. Marlow agreed with his counsel that the cost was $1,500 to $2,000. The Marlows did not provide any further evidence. As discussed above, this self-serving recollection is insufficient to establish a permit exemption. The Marlows further argue the bulkhead was exempt because it was needed for protection. Both RCW 90.58.030(2)(e)(ii) and WAC 173-27-040(2)(c) allow an exemption for a "normal protective bulkhead" on a single-family residence property. Based on our record, it does not appear the bulkhead was constructed to protect the Marlows' residence from erosion. Instead, it appears the bulkhead was created for more dryland area. Again, without further evidence, the Marlows fail to establish they are exempt from the permit requirements.

The retaining walls were constructed in 2006. The Marlows placed four retaining walls within the shoreline, two of which replaced existing retaining walls. They argue a

permit was not required because the new walls are maintenance or repair of the original walls. But, the walls are not comparable to the original in size, shape, configuration, location, material, and external appearance. The terracing has been largely expanded. The Marlows argue the walls are an exempt "appurtenance" to their home. Under WAC 173-27-040(2)(g), an appurtenance to a single-family residence is exempt from the permit requirements. In this context, an appurtenance is "a garage; deck; driveway; utilities; fences; installation of a septic tank and drainfield and grading which does not exceed two hundred fifty cubic yards and which does not involve placement of fill in any wetland or waterward of the ordinary high water mark." WAC 173-27-040(2)(g). A retaining wall is not included in this list. Accordingly, a permit was required.

Given all, we conclude none of the Marlows' exemption claims are well founded.

### E. Mr. Roth's Testimony

The issue is whether the hearing examiner's finding regarding the weight given to Mr. Roth's testimony and rejecting his expertise justifies relief under RCW 36.70.130(1)(c) as a decision not supported by substantial evidence.

The minimum qualifications for an expert used by a development proponent to address impacts and mitigation are set out in the County's SMP. The SMP defines a "qualified professional for wetlands" as a person with a "degree in biology, ecology, botany, or a closely related field and a minimum of five (5) years of professional experience in wetland identification and assessment in Eastern Washington." Douglas County SMP, ch. 8, § 203, *available at* (http://www.douglascountywa.net).

13

The Marlows retained Mr. Roth, a Western Washington resident, the day before the hearing and he visited the Marlows' property the day of the hearing. Mr. Roth did not testify regarding the scope and details of his investigation of the Marlows' property and did not prepare a written report; rather, Mr. Roth testified regarding general observations of the Marlows' property. Mr. Roth did not testify as to any professional experience involving Eastern Washington wetlands as required by the SMP. Based on the limited information provided regarding his education and experience, Mr. Roth did not establish his expertise under the County's SMP. The hearing examiner properly found likewise. Moreover, any error was harmless because the hearing examiner additionally found, "Even if Mr. Roth could be characterized as an expert witness . . . Mr. Roth's purported opinions [are not] convincing." CP at 13.

In sum, considering the SMP, the hearing examiner's specialized knowledge and expertise, the examiner's fact-finding discretion regarding credibility and evidence weight, and our standard of viewing the evidence and reasonable inferences from the evidence in the light most favorable to the prevailing party, we cannot conclude the hearing examiner erred regarding Mr. Roth's testimony.

## F. Attorney Fees

The County argues the Marlows' appeal is frivolous and requests attorney fees under RAP 18.1 and RCW 4.84.185 for defending against a frivolous appeal. "An appeal is frivolous if, considering the entire record, it has so little merit that there is no reasonable possibility of reversal and reasonable minds could not differ about the issues raised." *Johnson v. Jones*, 91 Wn. App. 127, 137, 955 P.2d 826 (1998). While

14

No. 31013-2-III
*Marlow v. Douglas County*

the Marlows have not established a basis to reverse the hearing examiner's decision, we cannot say their issues are so meritless that reasonable minds could not differ. Thus, the County's request is denied.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Brown, J.

WE CONCUR:

Siddoway, A.C.J.

Fearing, J.

15