# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 70320-0-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALEXANDER ORTIZ-ABREGO, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: January 16, 2018 |
| | ) | |

VERELLEN, C.J. — A jury convicted Alexander Ortiz-Abrego of three counts of child rape in the first degree. In a post-conviction competency hearing, the King County Superior Court found that Ortiz-Abrego was incompetent for the trial that occurred and granted a new trial. The State appealed. While that appeal was pending, the State pursued a statutory procedure seeking a new competency hearing, this time before a jury. New evidence was presented at this second competency hearing, and the jury found Ortiz-Abrego competent to stand trial.

This court accepted the trial court's certification of two issues for discretionary review: (i) whether competency to stand trial requires the capacity to understand a trial as it unfolds, and (ii) whether the jury in this case was correctly instructed on the law as to the competency requirement.

Competency is a capacity-based standard, but the court or a jury may consider whether a defendant did understand his or her trial as valid circumstantial

evidence of his or her capacity to understand. And a defendant may be found competent even in the absence of demonstrated understanding. Ortiz-Abrego's challenges to the jury instructions fail.

We affirm.

## FACTS

A jury convicted Alexander Ortiz-Abrego of multiple counts of child rape in the first degree. After trial, the court ordered a competency evaluation.

After an evidentiary hearing including expert testimony of Ortiz-Abrego's cognitive limitations, the trial judge found he was "not competent to stand the trial we gave him" and granted a new trial.[1] While the State's appeal was pending, Ortiz-Abrego was sent to Western State Hospital (WSH) to restore his competency for a new trial. The State commenced a second competency proceeding, but this time, the hearing took place before a jury. The same experts testified, but the State presented new evidence, including Ortiz-Abrego's jail phone calls consistent with his ability to understand strategies and analytical thinking.

The State retained Dr. Brian Judd and moved for permission to interview Ortiz-Abrego. The court ordered the interview, but required that it be taped. The State's experts agreed that, at some points, Ortiz-Abrego was malingering or exaggerating the extent of his disability.

Dr. Hendrickson opined that Ortiz-Abrego had the capacity to assist in his defense, meaning he was able to consult with his attorney with a reasonable

---

[1] Clerk's Papers (CP) at 383.

2

degree of rational understanding and had the capacity to have a factual and rational understanding of the charges and court proceedings. His opinion was based on his own interviews with Ortiz-Abrego, Ortiz-Abrego's jail phone calls, Dr. Tedd Judd's testing, police interviews with Ortiz-Abrego in 2006 and 2008, and chart notes from WSH. The jail phone calls demonstrated Ortiz-Abrego's analytical and planning skills and, unlike Dr. Hendrickson's interviews, they showed his familiarity with the role of his attorney, the potential penalties, and the role of the jury.

Dr. Nelson also observed that the jail phone calls showed a more sophisticated understanding of his legal situation. In one call, Ortiz-Abrego engaged in abstract problem solving involving his apartment, directing his wife in a strategy to deal with items based on contingencies, and managing their finances. In another, he also displayed abstract problem solving and the relatively sophisticated ability to break down a task to explain it to his son.

Portions of two interviews that Dr. Brian Judd conducted with Ortiz-Abrego were played at the competency hearing. He concluded that the low scores recorded by a defense expert in an adaptive functioning test were not credible based on Ortiz-Abrego's functioning in the community, that is, he drove, worked competitively with no special supervision needs, interacted effectively with coworkers, and spoke English at some jobs.

Dr. Tedd Judd administered a number of psychological tests in 2010 and 2012. He opined that Ortiz-Abrego has a borderline intellectual disability and a learning disability in auditory comprehension with conceptual problems.

3

The court instructed the jury:

> A defendant is incompetent when he lacks the capacity to understand the nature of the proceedings against him or to assist in his own defense as a result of a mental disease or defect.
>
> To prove that the defendant is incompetent, the State must establish either that the defendant has the capacity to understand the nature of the proceedings and the capacity to assist in his own defense, or that the lack of these capacities is not the result of a mental disease or defect.[2]

The court also instructed:

> "Understanding the nature of the proceedings" means that the defendant must have the ability to have a rational as well as factual understanding of the proceedings against him. This includes the capacity to understand that he can plead guilty or proceed to trial, to choose whether to testify or not, and to appreciate his peril.
>
> "Assisting in his own defense" means that he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding.
>
> To be competent, the defendant need not be able to choose or suggest trial strategy, help to form defenses, or even be able to recall past events. He is also not required to be able to decide which witnesses to call, to decide whether or how to cross examine witnesses, or to challenge witnesses.
>
> In reaching your determination, you may consider the defendant's appearance, demeanor, conduct, personal and family history, past behavior, and medical, psychological, and psychiatric opinions. You also may consider whether the defendant can recall and relate past facts, understand the roles of the judge, jury, defense attorney and prosecuting attorney, and appreciate the possible outcomes of a trial. You also may consider any other factor that reasonably bears on whether the defendant can rationally assist his attorney.[3]

---

[2] CP at 271.

[3] CP at 272-73.

The jury found Ortiz-Abrego competent to stand trial. This court granted discretionary review, accepting the trial court's RAP 2.3(b)(4) certification of two issues.

Subsequent to the jury competency hearing, our Supreme Court issued its opinion affirming the trial judge's analysis in the first competency hearing.[4]

## ANALYSIS

The two issues certified by the trial court are (i) whether competency to stand trial requires the capacity to understand a trial as it unfolds and, if so, to what extent, and (ii) whether the jury in this case was correctly apprised of the law as to the requirements for competency. There is no challenge to the sufficiency of the evidence.

### I. Competency Standard

Constitutional due process requires that an incompetent person may not be tried, convicted, or sentenced as long as that incapacity continues.[5] Similarly, RCW 10.77.050 bars an incompetent person from being tried or convicted for the commission of an offense so long as such incapacity continues. The requirement "seeks to ensure that [the defendant] has the capacity to understand the proceedings and to assist counsel."[6] RCW 10.77.010(15) provides "'Incompetency' means a person lacks the capacity to understand the nature of the

---

[4] State v. Ortiz-Abrego, 187 Wn.2d 394, 387 P.3d 638 (2017).

[5] U.S. CONST. amend. XIV; State v. Wicklund, 96 Wn.2d 798, 800, 638 P.2d 1241 (1982).

[6] Godinez v. Moran, 509 U.S. 389, 402, 113 S. Ct. 2680, 125 L. Ed. 2d 321 (1993).

proceedings against him or her or to assist in his or her own defense as a result of mental disease or defect.[7]

As confirmed by our Supreme Court in Ortiz-Abrego's recent appeal, competency is a capacity-based standard.[8] A defendant must have the *capacity* to understand the "proceedings."[9] There is no requirement of *actual* understanding, but a defendant's actual understanding may be considered as circumstantial evidence in a competency determination.[10] "[R]equiring proof of actual understanding to support a finding of competence . . . would be a departure from Washington's competency standard."[11] "Yes, a defendant may be found competent in the absence of demonstrated understanding."[12]

## II. Jury Instructions

Ortiz-Abrego contends the jury instructions substantially misstated the standard for competency. Specifically, that the trial court (i) improperly allowed the jury to find him competent even if it found he lacked the ability to understand the proceeding or rationally assist counsel, (ii) failed to instruct the jury it must give great weight to defense counsel's view of Ortiz-Abrego's inability to rationally

---

[7] See State v. Ortiz, 104 Wn.2d 479, 482, 706 P.2d 1069 (1985) ("In Washington, a person is competent to stand trial if he has the capacity to understand the nature of the proceedings against him and if he can assist in his own defense.").

[8] Ortiz-Abrego, 187 Wn.2d at 405.

[9] Id.

[10] Id. at 407.

[11] Id. at 406 (emphasis omitted).

[12] Id. at 407.

assist counsel, and (iii) erroneously instructed jurors they must unanimously agree in order to find him incompetent.

Here, the jury was instructed:

> A defendant is incompetent when he lacks the capacity to understand the nature of the proceedings against him or to assist in his own defense as a result of a mental disease or defect.

> To prove that the defendant is competent, the State must establish either that the defendant has the capacity to assist in his own defense, or that the lack of these capacities is not the result of a mental disease or defect.[13]

Ortiz-Abrego argues this was an incorrect statement of the law, but his argument fails.

The focus of the competency inquiry is "the defendant's mental capacity; the question is whether he has the *ability* to understand the proceedings."[14] The instructions to the jury adequately included the capacity-based standard. Contrary to Ortiz-Abrego's suggestion in his opening brief, it would have been improper to instruct the jury that a demonstrated lack of understanding compels the conclusion that he lacked the capacity to understand. Consistent with our Supreme Court's recent decision addressing the first competency hearing in this case, actual understanding during trial is merely circumstantial evidence that may be considered to determine whether he had the capacity to understand.[15]

---

[13] CP at 271.

[14] Godinez, 509 U.S. at 401 n.12.

[15] Ortiz-Abrego, 187 Wn.2d at 406-07.

Ortiz-Abrego contends the instruction with the statutory definition limiting incompetence to a lack of capacity resulting from mental defect or disease runs afoul of due process standards. We disagree.

The reference to a mental defect in RCW 10.77.010(15) is sufficiently broad to include a cognitive impairment, as the trial court found. "Defect" has the common meaning of "want or absence of something necessary for completeness, perfection, or adequacy in form or function."[16] Where the legislature has not defined a term, courts must give the term its everyday meaning.[17] When a word "is not exclusively of legal cognizance," an understanding of its meaning can fairly be imputed to laypeople.[18] Our Supreme Court incorporated the ordinary meaning of the term "mental disease or defect" in another section of chapter 10.77 RCW relating to release of persons acquitted by reason of insanity.[19] The court noted the definition is broad, but observed that other aspects of the statutory scheme would provide an appropriate framework.[20] Ortiz-Abrego does not establish the instruction based on the statutory definition of "incompetency" violated due process standards.

As to the other instructions challenged by Ortiz-Abrego, we do not consider an issue raised for the first time on appeal.[21] A party must object to an instruction

---

[16] WEBSTER'S THIRD NEW INT'L DICTIONARY 591 (1993).

[17] State v. Daniels, 87 Wn. App. 149, 156, 940 P.2d 690 (1997).

[18] Id.

[19] State v. Klein, 156 Wn.2d 102, 116-17, 124 P.3d 644 (2005).

[20] Id. at 118.

[21] RAP 2.5(a); State v. Kirkman, 159 Wn.2d 918, 926, 155 P.3d 125 (2007).

given by the trial court, identifying the legal deficiency.[22] When a party fails to request an instruction, it "'cannot predicate error on its omission.'"[23] A claimed error may be raised for the first time on appeal only if it is a "manifest error affecting a constitutional right."[24] For a constitutional error to be manifest, the defendant must demonstrate actual prejudice to his rights at trial, and that prejudice must appear in the record.[25] Actual prejudice means that the alleged error had practical and identifiable consequences at trial.[26] This exception to the ordinary requirement that an error be preserved by a timely objection must be construed narrowly.[27]

To the extent Ortiz-Abrego's supplemental brief suggests the trial court should have instructed the jury it could consider whether he actually understood the trial as it occurred, this suggestion is raised for the first time in his supplemental brief on appeal. Ortiz-Abrego did not object to the trial court's instructions on this basis, nor did he propose such an instruction. We conclude he has not sufficiently raised this issue for review.

---

[22] State v. Sengxay, 80 Wn. App. 11, 16, 906 P.2d 368 (1995); State v. Scott, 110 Wn.2d 682, 685-86, 757 P.2d 492 (1988).

[23] State v. Lucero, 152 Wn. App. 287, 292, 217 P.3d 369 (2009) (quoting McGarvey v. City of Seattle, 62 Wn.2d 524, 533, 384 P.2d 127 (1963)), rev'd on other grounds, 168 Wn.2d 785 (2010).

[24] RAP 2.5(a)(3); State v. McFarland, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995).

[25] Kirkman, 159 Wn.2d at 926-27.

[26] State v. O'Hara, 167 Wn.2d 91, 99, 217 P.3d 756 (2009) (quoting id. at 935).

[27] Kirkman, 159 Wn.2d at 935.

Ortiz-Abrego contends the trial court failed to instruct the jury it must give great weight to defense counsel's view of Ortiz-Abrego's inability to rationally assist counsel. But Ortiz-Abrego did not make such an objection or request such an instruction in the trial court. This challenge is not a manifest constitutional error.

Ortiz-Abrego contends the trial court erroneously instructed jurors they must unanimously agree in order to find him incompetent. But he failed to preserve that issue for review. The unanimity issue arose twice in the trial court, and Ortiz-Abrego did not argue unanimity was not required. He took exception to the unanimity instruction, but only in that it referred to the proceeding as a criminal case. Ortiz-Abrego does not establish manifest constitutional error allowing this issue to be raised for the first time on appeal, particularly for the first time in his supplemental brief.

### III. State's Expert Witness Interview

Ortiz-Abrego argues the trial court erred when it allowed the State to retain an expert and required Ortiz-Abrego to submit to an interview, but this issue is outside the scope of our narrow discretionary review.

RAP 2.4(a) provides:

> The appellate court will, at the instance of the appellant, review the decision or parts of the decision designated in the notice of appeal or, subject to RAP 2.3(e), in the notice for discretionary review, and other decisions in the case as provided in sections (b), (c), (d), and (e). The appellate court will, at the instance of the respondent, review those acts in the proceeding below which if repeated on remand would constitute error prejudicial to respondent. The appellate court will grant a respondent affirmative relief by modifying the decision which is the subject matter of the review only (1) if the respondent

10

also seeks review of the decision by the timely filing of a notice of appeal or a notice of discretionary review, or (2) if demanded by the necessities of the case.

This court granted discretionary review based on the certification from the trial court regarding two specific legal issues relating to the legal standard and jury instructions in the competency hearing. The ruling granting discretionary review under RAP 2.3(b)(4) accepted the certification as well taken. Such a certification is inherently limited to the issues certified. Allowing an appellant to raise any and all other interlocutory rulings not certified would undercut the purpose behind RAP 2.3(b)(4). The order allowing an interview by the State's expert was a separate earlier order not referenced in the certification and is beyond the scope of this discretionary review.

Affirmed.

WE CONCUR: