IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37482-3-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ADRIAN ADAME MADRID, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Adrian Adame Madrid appeals his conviction for second degree

burglary. He contends that because the verbal notice that he was trespassed from a

Moses Lake convenience store was unconstitutionally vague, the State failed to prove his

entry was unlawful; it was error to admit, as evidence, police officer body camera video

that was recorded in violation of Washington's privacy act; and he received ineffective

assistance of counsel.

Finding no error and no merit to issues raised by Mr. Adame Madrid in a pro se

statement of additional grounds, we affirm.

FACTS AND PROCEDURAL BACKGROUND

On October 14, 2019, Kimberly Andrews, an evening shift supervisor at Half Sun

Travel Plaza in Moses Lake, told Adriane Adame Madrid that he was no longer welcome

at the business. Police officers on a break happened to arrive at the plaza's convenience

store at that time, and Ms. Andrews asked if they would trespass Mr. Adame Madrid from the Travel Plaza. Mr. Adame Madrid was still outside, and one of the officers, Sergeant Kyle McCain, spoke to him, telling him he was not welcome at the business and if he came back, he could be arrested.

Less than a month later, Mr. Adame Madrid returned to the store. Rosa Arnold, a store employee, saw him take a $10.99 "air chuck"[1] from a shelf in the store's automotive aisle, put it in his left pants pocket and walk out without paying. Report of Proceedings (RP[2]) at 57-58. She and another employee followed Mr. Adame Madrid, stopped him, and asked him to turn out his pockets. He removed the air chuck from his pocket, placed it on the ground, and turned out his pockets as requested.

The police were called, and upon their arrival one of the officers, Colton Ayers, read Mr. Adame Madrid his *Miranda*[3] rights. Mr. Adame Madrid agreed to speak to the officers and told them he was not aware that he was not supposed to return to the property. He asked the officers to show him any written trespass notice issued against him. Evidently, no written notice was prepared on October 14.

---

[1] The record does not reveal what an "air chuck" is. An Internet search revealed they are "valve fittings . . . typically sold as attachments for tire pressure gauges, inflators, or air compressor hoses." *Frequently Asked Questions: Lightning Air Chucks*, JACO, https://jacosuperiorproducts.com/pages/frequently-asked-questions-lightning-air-chucks (last visited Mar. 29, 2021).

[2] References to RP are to the report of trial proceedings taking place on March 4, 2020, unless otherwise indicated.

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Mr. Adame Madrid was charged with second degree burglary.

A CrR 3.5 hearing was conducted, at which the State called Sergeant McCain, Officer Ayers, and a third officer to whom Mr. Adame Madrid had made statements, and each testified generally about the statements made by Mr. Adame Madrid and the circumstances under which the statements were made. The trial court found all the statements to be admissible, subject to any motions in limine about their substance. No body camera video was presented during the CrR 3.5 hearing, but at the conclusion of the hearing, the prosecutor mentioned that he intended to provide to defense counsel by the following week "the parts of the body cams that the State intends to display." RP (Nov. 8, 2019) at 42. Defense counsel voiced no objection.

At Mr. Adame Madrid's one-day jury trial, the State called as witnesses Ms. Andrews, Ms. Arnold, Sergeant McCain, and Officer Ayers. Without objection by the defense, the State played redacted sections of the video captured by Sergeant McCain's and Officer Ayers's body cameras during their contact with Mr. Adame Madrid.

In the video that was presented of Sergeant McCain's contact, the following exchange took place:

> [Sergeant McCain:] Make sure I can see your hands, okay? So they don't want you back here. What's your first name again?
>
> [Mr. Adame Madrid:] Um. . . Um. . . Adrian. But I—I'll make sure I never come here, but—but I—I feel harassed, you know?
>
> [Sergeant McCain:] Well they have a right not to—to allow whoever they want here to come here.

3

[Mr. Adame Madrid:] Yeah but—

[Sergeant McCain:] Is it Adame Madrid?

[Mr. Adame Madrid:] Yeah. You know what I mean?

[Sergeant McCain:] I understand. . . .

. . . .

[Sergeant McCain:] Okay. So you're not allowed back here. Kay? If you come back on the property you could be—you could be arrested. Okay?

[Mr. Adame Madrid:] [inaudible] I understand.[4]

[Sergeant McCain:] They don't want—they don't want you back here. Okay? So you need to leave now. Okay?

[Mr. Adame Madrid:] Yeah that's fine.

Ex. 5, 30 sec. to 1 min., 48 sec.

In the video that was played of Officer Ayers's contact, the following was said:

[Officer Ayers:] Adrian, I'm going to let you know what your rights are, alright? . . . [reads *Miranda* warning from card]. Do you understand the rights I've explained to you?

[Mr. Adame Madrid:] Yeah.

[Officer Ayers:] Having the rights in mind, do you wish to talk to us?

[Mr. Adame Madrid:] Huh?

[Officer Ayers:] Having your rights in mind, do you still want to talk to us?

[Mr. Adame Madrid:] Um. . . yes. [Mumbling.] I definitely didn't want to be on here . . . if I couldn't be here. You know, with that being said, like . . . I'm not sure.

---

[4] Mr. Adame Madrid's complete statement may have been "I don't know about that. Alright cause—I understand." Ex. 5, 1 min., 9 sec. to 1 min., 17 sec.

4

[Officer Ayers:] So Officer Salazar just trespassed—I think it said Salazar—just trespassed you not even a month ago.[5]  Told you you couldn't be here.

[Mr. Adame Madrid:] Did he?

[Officer Ayers:] Yep.  It was October 14.

[Mr. Adame Madrid:] Oh okay, but I mean, as far as like a written waiver or anything—but there was nothing.

[Officer Ayers:] You might not have signed it, but if you were told that you can't come back here, then you can't be here.

[Mr. Adame Madrid:] I couldn't remember . . . but they never told me I couldn't come on the property like forever. . . .  But I was actually looking for my beanie hat that . . . I had misplaced. . . .  Just so we have that clear cause I would like to sign that, you know, so I can make sure that I have the reminder as to why I shouldn't be here next time.

[Officer Ayers:] Do you want a copy of that form?

[Mr. Adame Madrid:] Yeah or maybe I should sign it.  That way. . . I could know, you know.

[Officer Ayers:] Okay I can go grab them and have them bring the form out and . . . make sure we have that signed.

[Officer Ayers:] Adrian are you still wanting to sign this?

[Mr. Adame Madrid:] No, but—

[Officer Ayers:] Or do you just want a copy of it.

[Mr. Adame Madrid:] But I want a copy of the one that's already signed.

[Officer Ayers:] I don't know if there was one signed or not.  There's not always a form signed.  But if you—or Officer Salazar told you you can't be back here, then that works.  There doesn't always have to be a form.

[Mr. Adame Madrid:] But I don't agree . . . with being charged with any felony crime.

---

[5] Officer Ayers clarified at trial that he was mistaken about it being Officer Salazar who had trespassed Mr. Adame Madrid.

Ex. 6, 0.00 sec. to 2 min., 22 sec.  Mr. Adame Madrid continued to protest that he was never given a written notice of trespass and insisted, "[S]ometimes they'll just kick you off somebody's property for a little bit."  Ex. 6, 2 min., 58 sec. to 3 min., 3 sec.

The defense presented no evidence.

The jury found Mr. Adame Madrid guilty.  He appeals.

ANALYSIS

Mr. Adame Madrid makes a dozen assignments of error on appeal that fall into four categories.  He (1) argues that Ms. Andrews's and Sergeant McCain's statements that he was not allowed on the Travel Plaza premises did not afford him due process; (2) challenges the sufficiency of the evidence; (3) contends that the body camera video presented at trial was recorded in violation of the "Privacy Act," chapter 9.73 RCW; and (4) argues that his trial lawyer provided ineffective assistance by failing to object to admission of the video and failing to request a jury instruction on a lesser included charge of third degree theft.

I.     A PROPERTY POSSESSOR'S COMMAND THAT A PERSON NOT ENTER HIS OR HER PREMISES IS NOT SUBJECT TO A CONSTITUTIONAL VAGUENESS CHALLENGE

The jury was properly instructed that to convict Mr. Adame Madrid of second degree burglary, the State was required to prove beyond a reasonable doubt

(1)    That on or about November 7, 2019, the defendant entered or remained unlawfully in a building;

(2)    That the entering or remaining was with intent to commit a crime against a person or property therein; and

6

(3)     That this act occurred in the State of Washington.

Clerk's Papers (CP) at 27; RCW 9A.52.030.  The jury was instructed that "[a]

person enters or remains unlawfully in or upon premises when he or she is not

then licensed, invited, or otherwise privileged to so enter or remain."  CP at 26.

"A private property owner may restrict the use of its property . . . so long as the

restrictions are not discriminatory."  *State v. Kutch*, 90 Wn. App. 244, 247, 951 P.2d

1139 (1998) (citing *State v. Blair*, 65 Wn. App. 64, 67, 827 P.2d 356 (1992)).  A person's

presence may be rendered unlawful by a revocation of the privilege to be there.  *Id.* at

249 (citing *State v. Collins*, 110 Wn.2d 253, 258, 751 P.2d 837 (1988)).  "The right to

exclude extends even if the property is otherwise open to the public."  *Id.* at 247 (citing

*State v. McDaniels*, 39 Wn. App. 236, 240, 692 P.2d 894 (1984)).

While it is a common practice for businesses and police to create a written record

when notifying a person that his privilege to enter premises is revoked and to provide the

person with a copy, neither is required.  *Id.* at 248.  "A verbal notice might just as

adequately inform [a person] that his invitation has been revoked."  *Id.*  In *McDaniels*, for

instance, the juvenile defendant and two friends entered a church that was open for

worship or prayer.  39 Wn. App. at 240.  A church member who concluded the youths

had not entered for evening services confronted them and implicitly told them to leave.

They did, but McDaniels then surreptitiously reentered and stole a coat.  McDaniels was

charged with second degree burglary.  Evidence of the church member's verbal directive

7

to leave was sufficient to prove that McDaniel was not licensed, invited, or privileged to re-enter the church.

Mr. Adame Madrid nonetheless argues that he was denied due process because Ms. Andrews's and Sergeant McCain's directives to leave the Travel Plaza and not come back were vague.

The due process vagueness doctrine under the Fourteenth Amendment to the United States Constitution and article I, section 3 of the Washington Constitution requires that citizens have fair warning of proscribed conduct. *State v. Bahl*, 164 Wn.2d 739, 752, 193 P.3d 678 (2008). It requires that a *statute* "define the criminal offense with sufficient definiteness so that ordinary people can understand what conduct is prohibited," and "'provide ascertainable standards of guilt to protect against arbitrary enforcement.'" *City of Bremerton v. Widell*, 146 Wn.2d 561, 581, 51 P.3d 733 (2002) (quoting *State v. Thorne*, 129 Wn.2d 736, 770, 921 P.2d 514 (1996)).

"Traditionally the overbreadth and vagueness doctrines have been applied to legislative enactments." *State v. Llamas-Villa*, 67 Wn. App. 448, 455, 836 P.2d 239 (1992). They have also been applied to protection or no-contact orders whose violation could result in criminal penalties, however, and to community custody conditions. *See, e.g.*, *City of Seattle v. May*, 171 Wn.2d 847, 855-56, 256 P.3d 1161 (2011); *Bahl*, 164 Wn.2d at 752-53.

Mr. Adame Madrid cites no case from this or any other jurisdiction in which the doctrines have been applied to a property possessor's admonishment to an individual to stay away from its premises. The Washington Supreme Court explicitly refused to apply the vagueness doctrine to a housing authority's adopted policy for excluding persons from its common areas in *Widell*, holding that the exclusion criteria in its policy "do not define a criminal offense, but rather identify the bases upon which an individual may be denied future entry into [the housing authority's] property." 146 Wn.2d at 581. The court observed that the policy "is not a part of [the Bremerton municipal code provision] under which Petitioners were charged." *Id.*

Due process requires only that the statute under which Mr. Adame Madrid was prosecuted provide fair warning of proscribed conduct. It has no application to Ms. Andrews's and Sergeant McCain's directives.

II.    THE EVIDENCE WAS SUFFICIENT

Mr. Adame Madrid challenges the sufficiency of the evidence to establish that on or about November 7, 2019, he entered or remained unlawfully in a building.

The test for sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). All reasonable inferences from the evidence are drawn in favor of the State and are interpreted most strongly against the defendant. *Id.*

9

Unlike criminal trespass, for a defendant to be guilty of second degree burglary, he need not know that he is entering or remaining unlawfully. The mental state required to prove second degree burglary is the intent to commit a crime, not to knowingly enter premises unlawfully. *State v. Allen*, 101 Wn.2d 355, 361, 678 P.2d 798 (1984); *cf. State v. Moreno*, 14 Wn. App. 2d 143, 156, 470 P.3d 507 (2020) (knowledge of the unlawfulness of entry is not an element of first degree burglary), *review granted on this issue*, *State v. Moreno*, 2021 WL 818347 (2021). It was for the jury to decide whether Mr. Adame Madrid was "licensed, invited, or otherwise privileged" to enter the Travel Plaza.

In *State v. Finley*, a defendant was told to leave a bar, which was attached to a restaurant, after he confronted his girlfriend and accused her of cheating on him. 97 Wn. App. 129, 131, 982 P.2d 681 (1999). Both a bartender and police told the defendant to leave and that he could not come back. About 15 minutes later, the defendant reentered the building and stood in a doorway between the bar, restaurant, and restroom. The defendant was charged with trespass. He asserted the "public premises" defense to the trespass charge, under which the State had the burden of proving that his permission to enter or remain had been properly revoked. *Id.* On appeal, he argued he was only told he could not enter the bar area and did not understand that the order applied to the entire premises. The court held that what a defendant "'understood' or 'believed' is not relevant to whether his presence was unlawful under the public premises defense . . . .

10

The pertinent viewpoint is that of a 'rational trier of fact.'" *Id.* at 138 (quoting *State v. R.H.*, 86 Wn. App. 807, 812-13, 939 P.2d 217 (1997)).

Here, the question is whether rational jurors could have found that Mr. Adame Madrid was not licensed, invited, or otherwise privileged to enter the plaza's convenience store on November 7 in light of Ms. Andrews's and Sergeant McCain's directives three weeks earlier. Neither Ms. Andrews nor Sergeant McCain put a time frame on the ban. Mr. Adame Madrid argues that without one, the evidence was too speculative for the jurors to find guilt. Viewed in the light most favorable to the State, however, the inference can be drawn that there *was* no time frame: the ban was unrestricted. The evidence was sufficient.

III. MR. ADAME MADRID'S PRIVACY ACT CHALLENGE TO THE RECORDINGS WAS NOT PRESERVED

Mr. Adame Madrid next argues that the body camera recordings of his conversations with Sergeant McCain on October 14 and Officer Ayers on November 7 violated the Privacy Act and should not have been admitted. He relies on RCW 9.73.030(1)(b) for his contention that the recording of Sergeant McCain's October 14 admonishment was illegal. RCW 9.73.030(1)(b) provides, as relevant here, that it is unlawful for an individual to record any "[p]rivate conversation . . . without first obtaining the consent of all the persons engaged in the conversation."

11

He relies on a different provision, RCW 9.73.090(1)(b), for his contention that the recording of his statements to Officer Ayers and others on November 7 was illegal. RCW 9.73.090(1)(b), a custodial interrogation provision, addresses "[v]ideo and/or sound recordings . . . of arrested persons by police officers responsible for making arrests or holding persons in custody before their first appearance in court." It provides that such recordings are legal if the recording is made in strict conformity with certain requirements.[6] As far as one can tell from the redacted video of the November 7 contact, the requirements were not observed.

RCW 9.73.050 generally provides that information obtained in violation of RCW 9.73.030 is inadmissible in any civil or criminal case. But Mr. Adame Madrid did not object to the evidence in the trial court, so the issue is unpreserved. We will not consider his objection for the first time on appeal. RAP 2.5(a). A violation of the Privacy Act

---

[6] The requirements are that:

(i) The arrested person shall be informed that such recording is being made and the statement so informing him or her shall be included in the recording;
(ii) The recording shall commence with an indication of the time of the beginning thereof and terminate with an indication of the time thereof;
(iii) At the commencement of the recording the arrested person shall be fully informed of his or her constitutional rights, and such statements informing him or her shall be included in the recording;
(iv) The recordings shall only be used for valid police or court activities.

RCW 9.73.090(1)(b).

presents a statutory issue, not a constitutional one, so RAP 2.5(a)(3) does not apply.

*State v. Sengxay*, 80 Wn. App. 11, 15, 906 P.2d 368 (1995).

IV.     INEFFECTIVE ASSISTANCE OF COUNSEL

      A.      Failure to object to body camera video

Mr. Adame Madrid recasts the alleged Privacy Act violations as the basis for his first ineffective assistance of counsel claim. To prevail on an ineffective assistance of counsel claim, Mr. Adame Madrid must demonstrate that defense counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness based on consideration of all the circumstances, and the deficient representation prejudiced the defendant, i.e., there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). If a defendant fails to establish either prong, we need not consider the other. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

In order for the court to find deficient performance, the defendant must establish "'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011) (quoting *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987)). "The threshold for the deficient performance prong is high" and there is "'a strong presumption that counsel's performance was reasonable.'" *Id.* at 33 (quoting

*State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)).  Legitimate trial tactics cannot constitute deficient performance.  *State v. Garrett*, 124 Wn.2d 504, 520, 881 P.2d 185 (1994).

A defendant must also "affirmatively prove prejudice."  *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  Courts find prejudice where, but for an attorney's deficient performance, there was a reasonable probability of a different outcome that is "'sufficient to undermine confidence in the outcome.'"  *Grier*, 171 Wn.2d at 34 (quoting *Strickland*, 466 U.S. at 694).

Looking first at the failure to object to the admission of the video of the October 14 conversation with Sergeant McCain, we find no deficient performance.  RCW 9.73.030(1)(b) applies only to the unconsented-to recording of a "private conversation." It is well settled that a uniformed police officer's conversation with a person in a public place, in the course of the officer's law enforcement work, is not a private conversation within the meaning of the statute.  *Lewis v. Dep't of Licensing*, 157 Wn.2d 446, 459, 139 P.3d 1078 (2006).

The failure to object to the admission of the statements made to Officer Ayers and others on November 7 is a different story, however.  A recording that fails to strictly comply with the custodial interrogation conditions of RCW 9.73.090(1)(b) is inadmissible.  *Lewis*, 157 Wn.2d at 472; *State v. Cunningham*, 93 Wn.2d 823, 831, 613 P.2d 1139 (1980).  The fact that there was a violation of the custodial interrogation

provision does not require the exclusion of other evidence acquired at the same time as the improper recording, however.  *See Lewis*, 157 Wn.2d at 472.

Defense counsel was not ineffective in failing to object to the redacted video of the November 7 contact for two reasons.  First, there was a clear tactical reason for choosing not to object.  The body camera video presented the jury with Mr. Adame Madrid's defense—his protestation that he had not understood the scope of the banishment—without Mr. Adame Madrid having to testify.  Deficient representation is not shown.

Second, Mr. Adame Madrid cannot affirmatively show prejudice where, had the recording been ruled inadmissible, Officer Ayers and the other officer present at the November 7 contact could have testified to Mr. Adame Madrid's statements to them.

B.      Failure to request a third degree theft instruction

Mr. Adame Madrid's second basis for alleging ineffective assistance of counsel is his trial lawyer's failure to request instruction on what he contends is the lesser-included charge of third degree theft.  A defendant is entitled by statute to an instruction on a lesser included offense if each of the elements of the lesser offense is a necessary element of the offense charged, and the evidence in the case supports an inference that the lesser crime was committed.  RCW 10.61.006; *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978).

The State points out that this court has previously held in an unpublished decision that third degree theft, as a purported lesser included offense of second degree burglary,

fails the first, legal, prong of the *Workman* test. *See State v. Smith*, No. 67709-8-I, slip op. at 2-7 (Wash. Ct. App. Mar. 4, 2013) (unpublished), https://www.courts.wa.gov /opinions/pdf /677098.pdf.[7] The State encourages us to adopt *Smith*'s analysis. We review the legal prong of the *Workman* test de novo. *State v. LaPlant*, 157 Wn. App. 685, 687, 239 P.3d 366 (2010).

   *Smith* observed that the elements of second degree burglary are entering or remaining unlawfully in a building, and doing so with intent to commit a crime against a person or property therein; the elements of third degree theft are the commission of a theft of property or services not exceeding $750 in value. It concluded that "none of the elements of third degree theft are necessary elements of second degree burglary." No. 67709-8-I, slip op. at 3. Appellant Smith had nonetheless directed this court's attention to the fact that the information and to-convict instructions in his case specified that the crime Smith intended to commit in the burglary was theft.[8] He cited *State v. Berlin*, 133 Wn.2d 541, 947 P.2d 700 (1997) as requiring that the court consider the facts as charged and prosecuted.

---

   [7] Unpublished decisions have no precedential value, are not binding on any court, and are cited only for such persuasive value as the court deems appropriate. *See* GR 14.1.

   [8] As pointed out in *Smith*, the intent to commit a *specific* crime inside the burglarized premises is not an element of burglary. *Smith*, No. 67709-8-I, slip op. at 6. Unlike in *Smith*, the information and jury instructions in this case did not identify "theft" or any other specific crime as the intended crime.

16

This court held that *Smith* misanalysed *Berlin*. *Smith*, No. 67709-8-I, slip op. at 4-5. It pointed out that in *Berlin*, our Supreme Court was dealing with a greater offense that could be committed by alternative means, and it held only that in such a case, the legal prong is applied to the *statutory means* of the greater offense that is charged and prosecuted. *Id*. Since RCW 9A.52.030 does not provide alternative means of committing second degree burglary, *Berlin* did not apply. *Id*. at 5.

An equivalent holding appears in a published decision, *State v. Boswell*, 185 Wn. App. 321, 335, 340 P.3d 971 (2014). *Boswell* holds that "the rule under *Berlin* is that when a defendant is charged with an alternative means crime, the court determines whether a lesser included offense instruction is appropriate based on the alternative means charged, not the statute as a whole." *Id.* at 334 (citing *Berlin*, 133 Wn.2d at 550). Where the greater offense charged is not an alternative means crime, "the clarification articulated in *Berlin* does not apply." *Id.* at 335. "We do not examine the facts underlying the charge unless we reach the factual prong of the *Workman* test." *Id.*

Here, the fact that the evidence established a third degree theft is irrelevant to whether Mr. Adame Madrid was entitled to instruction on third degree theft as a lesser included offense. Its elements are not necessary elements of second degree burglary.

Because he was not entitled to the instruction, we need not address whether his trial lawyer could have had a tactical reason for not requesting it.

17

STATEMENT OF ADDITIONAL GROUNDS (SAG)

In a pro se statement of additional grounds, Mr. Adame Madrid raises four. We address only his third and fourth, unable to surmise when and how the error raised by his first and second grounds are alleged to have occurred. While Mr. Adame Madrid is not required to cite to the record or authorities in a SAG, he must inform the court of the "nature and occurrence of the alleged errors." RAP 10.10(c).

*Additional ground 3: exceeding time for trial under CrR 3.3.* Mr. Adame Madrid appears in his additional ground 3 to complain that his trial was delayed beyond the time for trial required by CrR 3.3. Mr. Adame Madrid was arraigned on November 19, 2019. His jury trial took place on March 4, 2020.

CrR 3.3 requires trial within 60 days of arraignment for defendants who are detained on the current charges, while requiring trial within 90 days for all others, including those held in custody on unrelated matters. CrR 3.3(a)(3)(v), (b)(1), (2). A trial date can be continued in accordance with CrR 3.3(f)(2); when it is, the effect of the continuance is to exclude the period of the continuance from the time for trial period. CrR 3.3(e)(3). The decision to grant or deny a continuance is reviewed for abuse of discretion. *State v. Ollivier*, 178 Wn.2d 813, 822-23, 312 P.3d 1 (2013).

A party that objects to a continuance under CrR 3.3(f) "must, within 10 days after the notice is mailed or otherwise given, move that the court set a trial within those time limits." CrR 3.3(d)(3). "A party who fails, for any reason, to make such a motion shall

18

lose the right to object that a trial commenced on such a date is not within the time limits prescribed by this rule." *Id.*; *accord State v. Farnsworth*, 133 Wn. App. 1, 12-13, 130 P.3d 389 (2006).

On the record provided, Mr. Adame Madrid's challenge fails. Appointed counsel arranged for transcription of the hearings at which Mr. Adame Madrid's trial date was changed, so we know that the trial date was continued on January 6, January 15, February 3, and February 10. The record on appeal contains no relevant clerk's papers, but it is clear from the reports of proceedings that at least some of the continuances were either requested or agreed to by defense counsel, even if Mr. Adame Madrid is on the record as objecting on some occasions. "The bringing of [a motion to continue] by or on behalf of any party waives that party's objection to the requested delay." CrR 3.3(f)(2). Most importantly, there is no record of any timely objection being filed in response to the continued trial dates, so Mr. Adame Madrid lost his right to object.

*Unlawful incarceration; no probable cause.* Mr. Adame Madrid's fourth ground complains of his "unlawful incarceration" and cites *Gerstein v. Pugh*, 420 U.S. 103, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975). SAG at 2. He appears to base this ground on the fact that at his preliminary appearance, the trial court found probable cause for a theft, but not for second degree burglary. The trial court explained that it lacked information on when and how Mr. Adame Madrid had been trespassed from the Travel Plaza. The trial court proceeded to set conditions of release on the basis of the probable cause it found.

The trial court's finding of probable cause to believe that a third degree theft had been committed provided the required support for Mr. Adame Madrid's warrantless arrest. Moreover, as *Pugh* itself holds, a suspect being detained may challenge the probable cause for that confinement, but a conviction will not be vacated on the ground that the defendant was improperly detained pending trial. *Id*. at 119.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Pennell, C.J.

_____
Fearing, J.